FILED
SEP 23 2015
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 13-16845-B-7 |
| Keystone Mine Management II, | DC No. KDG-8 |
| Debtor. | |

**MEMORANDUM DECISION REGARDING
APPLICATION FOR INTERIM COMPENSATION**

The law firm of Klein, DeNatale, Goldner, et al. ("KDG") has filed its first application for interim compensation under 11 U.S.C. § 331 (the "Fee Application"). KDG was authorized to serve as counsel for the chapter 7 trustee, Vincent Gorski (the "Trustee") after the case was converted from chapter 11. The Fee Application is opposed by a group of related parties, specifically Kirk L. DuShane, Keystone Mining Company, Ltd., Keystone Mine Management, Ltd., Patrick O'Brien and Roger Smith (the "Respondents"). The briefing for this contested matter is now complete. Neither party filed a separate statement of disputed material factual issues in compliance with Local Bankruptcy Rule 9014-1(f)(B). They have therefore consented to resolution of the Fee Application and all disputed material factual issues without an evidentiary hearing pursuant to Fed.R.Civ.P. 43(c). The Fee Application was originally noticed for a hearing, however, the court deemed this matter suitable for resolution without oral argument and the hearing was dropped from calendar. For the reason set forth below, the Fee Application will be approved.

This memorandum decision contains findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052.[1] The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, 11 U.S.C. §§ 330 & 331 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A).

**Background and Findings of Fact**.

This bankruptcy began as a voluntary chapter 11 on October 21, 2013. The debtor, Keystone Mine Management II (the "Debtor"), is a California general partnership. The bankruptcy was filed in response to a contentious civil action involving related partnerships and parties, then pending in the Orange County Superior Court (the "State Litigation"). Respondent Kirk L. DuShane ("DuShane") signed the schedules in this case under penalty of perjury in his capacity as the Debtor's general partner. The Debtor's schedules list essentially one asset described as "50 U.S. Bureau of Land Mines [sic] Claims (20 acres each)" and some related equipment, much of which is described as "badly damaged." The Debtor valued these 50 BLM claims at $319 million based on a 1991 geologic projection of the gold reserves. It valued the equipment at $134,000. (The 50 BLM mining claims and related equipment are hereafter referred to as the "Mining Assets.") The schedules list only two secured creditors, Dr. William T. Weyerhaeuser and the WBW Trust, with a claim in the amount of $2.7 million secured by a lien against some or all of the Mining

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

2

Assets, and the Inyo County Tax Collector with a property tax claim in excess of $47,000. None of the Mining Assets had been operated in over 20 years. The Debtor had no income, no expenses, and no employees.[2] Virtually all of the creditors who filed proofs of claim in this case are insiders and taxing authorities.

The background of this case, and the difficulties encountered by the Trustee, are set forth in pertinent part in the Memorandum Decision, dated July 8, 2015, which was submitted by the Trustee, signed by the court, and filed in support of a motion by the Trustee to sell the Mining Assets (Doc. No. 494) and the Declaration of Lisa Holder, Esq., filed in support of this motion (Doc. No. 522). Briefly, this bankruptcy was filed as a chapter 11 by DuShane on October 21, 2013. Ostensibly, DuShane's objective in filing chapter 11 was to secure sufficient financing to reopen and operate the Mining Assets. However, it very soon became apparent that the Debtor had little hope of successfully reorganizing and the court granted the U.S. Trustee's motion to convert the case to chapter 7 on February 7, 2014. Vincent Gorski was appointed to act as the chapter 7 trustee.

All the Trustee needed to do in this case was to advertise and sell the Mining Assets. Indeed, the Trustee originally attempted to sell the Mining Assets in May 2014 (Doc. No. 166). However, from the beginning, Gorski's efforts were met with passionate opposition, led by DuShane, and his counsel, Meir J. Westreich. The Respondents have been profoundly unhappy with the Trustee's administration of this case and they actively endeavored to delay the inevitable sale of the Mining Assets. They successfully delayed the case for many months by, *inter alia*, forcing the Trustee to first prosecute an adversary proceeding for quiet title to the Mining Assets. Ultimately, the Mining Assets were noticed for

---

[2] Debtor's first monthly operating report, Doc. No. 55, filed January 7, 2014.

3

sale subject to higher and better bids. The Respondents appeared at the hearing in opposition to the Trustee's motion, however, they declined to bring an interested buyer for the Mining Assets, there were no "higher and better" bids. The court therefore authorized the Trustee to sell the Mining Assets to the "stalking-horse" bidder, Bush Management Company, successor to the original secured creditor ("BMC").

**Respondent's Opposition.** The Respondents oppose the Application and request that much of KDG's fees be disallowed as unproductive (the "Opposition"). The Respondents offer no suggestion as to what might constitute an appropriate fee award for the substantial amount of work they forced the Trustee and his counsel to do in this case. Their specific objections to KDG's fees essentially just repeat the various objections they have lodged throughout the case. They accept no responsibility for making this case as lengthy and difficult as it turned out to be.

**Analysis and Conclusions of Law.**

When bankruptcy courts are asked to review the fees incurred by a professional person employed to work in a case under § 327, the process begins with reference to the Bankruptcy Code which offers a statutory framework for analyzing the fees. The Code mandates that professional fees must be actual, necessary and reasonable.[3]

---

[3]Professional compensation for persons employed to work for the bankruptcy estate is governed by § 330(a) which provides in pertinent part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, . . . the court may award . . . a professional person employed under section 327 or 1103–

    (A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney . . . ; and

    (B) reimbursement for actual, necessary expenses.

4

The concept of reasonableness when applied to professional fees invokes a combination of objective and subjective inquiries. Objectively, the court must be persuaded that the work performed in a particular case was consistent with the kind of service which a similarly situated debtor might require. The court must also determine that the value of the services is consistent with the cost of similar services for similar work. Subjectively, the court must inquire whether the professionals exercised prudent billing judgment in the decisions that were made to engage the services, the way the work was assigned, and the manner in which it was actually performed.

**<u>Valuing Professional Services, the Lodestar Approach.</u>** In the Ninth Circuit, the customary method for determining the reasonableness of a professional's fees is the "lodestar" calculation. *Morales v. City of San Rafael*,

---

(2) The court may, on its own motion or on the motion of . . . any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

96 F.3d 359, 363 (9th Cir. 1996), *amended*, 108 F.3d 981 (9th Cir. 1997). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363 (citation omitted). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A compensation award based on the loadstar is a presumptively reasonable fee. *In re Manoa Fin. Co.*, 853 F.2d 687, 691 (9th Cir. 1988).

In rare or exceptional instances, if the court determines that the lodestar figure is unreasonably low or high, it may adjust the figure upward or downward based on factors enumerated in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67 (9th Cir. 1975). *Morales*, 96 F.3d at 363–64. The original *Kerr* factors include:

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill requisite to perform the professional service properly;

(4) the preclusion of other employment by the professional due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the professionals;

(10) the "undesirability" of the casep;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Kerr*, 526 F.2d at 70 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

However, some of the *Kerr* factors have been subsumed as a matter of law within the initial lodestar calculation and should be taken into account in either the reasonable hours component or reasonable hourly rate component. *Morales*, 96 F.3d at 363–64 & nn.8–9. These include (1) the novelty and complexity of the issues, *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 898–900 (1984)); (2) the special skill and experience of the professional, *id.*; (3) the quality of representation, *id.*; (4) the results obtained, *id.*; and (5) the contingent nature of the fee agreement, *City of Burlington v. Dague*, 505 U.S. 557, 565–67 (1992). These subsumed factors may not act as independent bases for adjustments to the lodestar figure. *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620 n.4 (9th Cir. 1987).

Given the two-step "lodestar" approach, the court has considerable discretion in determining the reasonableness of professional's fees. *Gates v. Duekmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). It is appropriate for the court to have this discretion "in view of the [court's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437.

**Application of the Lodestar to This Case.** The first step in the "lodestar" process, the "reasonable hours" analysis, requires the court to determine if the professionals exercised prudent billing judgment in the performance of their duties to the client. Prudent billing judgment is an essential part of the lodestar analysis. Unless the court is satisfied that the professionals were prudent and made a good faith effort to perform their work efficiently, then the court cannot apply the lodestar presumption to any of their fees. On the "billing judgment" issue, the Supreme Court has commented,

/ / /

/ / /

> The [court] . . . should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the [party requesting attorney's fees] should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Hensley*, 461 U.S. at 434 (citations and internal quotation marks omitted, emphasis in original).

It is not sufficient for the fee applicant to simply represent that all of the time claimed was usefully spent, and the court should not uncritically accept these representations. *Jordan*, 815 F.2d at 1263 n.8 (citation omitted). Instead, the fee applicant must show that the time spent was reasonably necessary and that the professional made a good faith effort to exclude excessive, redundant, or unnecessary hours. *Id.* (citation omitted).

The job of the chapter 7 trustee is to liquidate a debtor's assets and wind up the case as expeditiously as possible. § 704(a). Here, the difficulties inherent with a case that had failed reorganization in chapter 11 were multiplied many-fold by complex issues and by the actions of the Respondents. Instead of choosing to cooperate with the Trustee and make the most of the Debtor's assets, they instead worked to impede the Trustee at every step in one of this court's most contentious chapter 7 cases.

The court has reviewed carefully the Fee Application and KDG's billing records offered in support of the Application. The court's record and KDG's time records, taken together, persuade the court that KDG exercised reasonable billing judgment in the services reflected in the Fee Application. For example, it appears that the attorney primarily responsible for the case delegated research on some of the issues to associates who billed at a lower rate, sometimes at $0.0 per

hour and there was virtually no billing for inter-office conferences. A large amount of the time billed was on account of communication, with the Respondents, the BLM, potential buyers, and the Trustee, among others. Accordingly, the "lodestar" presumption of reasonableness applies.

The court has also considered the specific time entries at issue, the amount of money in dispute, the rates charged by KDG compared to the cost of outside services, if available, and the scope of the work performed, the unusual difficulties encountered, and the results obtained. Based thereon, the court is persuaded that the hours billed by KDG were actual, necessary and reasonable.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the fees billed by KDG in the Fee Application were actual, necessary and reasonable. Accordingly, the Respondents' Objection will be overruled and KDG's Fee Application will be approved. KDG shall submit a proposed order.

Dated: September 23, 2015

W. Richard Lee
United States Bankruptcy Judge

1
2
3       **Instructions to Clerk of Court**
        **Service List - Not Part of Order**/Judgment
4
5       The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___X___ the U.S. mail.
6
7       Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and _X_ Other Persons Specified Below:
8       Lisa Holder, Esq.
        Klein, DeNatale, Goldner,
9         Cooper, Rosenlieb & Kimball, LLP
        4550 California Avenue, Second Floor
10      Bakersfield, CA 93309

11      Meir J. Westreich, Esq.
        Attorney at Law
12      221 East Walnut, Suite 200
        Pasadena, CA 91101
13
        Office of the U.S. Trustee
14      U.S. Courthouse
        2500 Tulare Street, Suite 1401
15      Fresno, CA 93721

16
17
18
19
20
21
22
23
24
25
26
27
28